**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                                :

ROBERT DICUIO, on behalf of himself    :
and all others similarly situated,          :
                                :

           Plaintiff,           :    Civ. Action No.: 11-1447 (FLW)
                                :

v.                              :    **OPINION**
                                :

BROTHER INTERNATIONAL       :
CORPORATION,                  :
                                :

          Defendant.        :
———————————————————:

**WOLFSON, District Judge**:

      In this putative class action, Plaintiffs Robert Dicuio ("Dicuio"), William Self, Robert Albanese, Reuben Zadeh, Karen Pociluyko, Terry Pociluyko, Angela Bryant, and Robert Steuer (collectively "Plaintiffs") bring this suit under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332, alleging that Defendant Brother International Corporation ("Defendant") misrepresented that its color toner cartridges would need to be replaced only when the toner was depleted when, in fact, its printers are designed to cease printing when only one of the three color toner cartridges has exhausted its contents. Presently before the Court is Defendant's motion to dismiss Plaintiffs' First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Court grants Defendant's motion with respect to Plaintiffs' breach of express and implied warranty, breach of the covenant of good faith

and fair dealing, and injunctive relief claims but denies the motion with respect to all other claims.

## I.      BACKGROUND

The following facts are taken from Plaintiff's Complaint and, for the purposes of this Rule 12(b)(6) motion, the Court takes Plaintiffs' version of events to be true.  In this section, I provide a brief overview of Plaintiffs' allegations, reserving a more detailed description for my discussion of the Defendant's legal challenges in the analysis section of this Opinion.

Each of the plaintiffs purchased a color laser printer manufactured by Defendant. Compl., ¶ 3. According to the FAC, this type of printer contains three "independent" color toner cartridges in yellow, magenta, and cyan.  *Id.* at ¶ 2.  Plaintiffs allege that when any one of the toner color cartridges is depleted, a "toner life end" message is displayed on the printer indicating which color must be replaced.  *Id.*  Importantly, Plaintiffs further allege, that not just one, but all three color toner cartridges, must be replaced in order for the printer to continue to print in color. *Id.*  "As a result, consumers are forced to buy not one, but three replacement color toner cartridges, in order to render the printers operable," Plaintiffs assert.  *Id.*  Each plaintiff avers that he or she personally incurred unforeseen costs due to this alleged defect; each time one of the independent color toner cartridges became depleted, he or she was "forced to purchase not only a replacement . . . color toner cartridge for the color that had been exhausted, but two other new toner color cartridges for the other two colors."  *Id.* at ¶¶ 3-9.

Plaintiffs further assert that, prior to and at the time they purchased the subject printers, Defendant misrepresented the amount of pages of printing that they would receive from each independent color toner cartridge.  According to Plaintiffs, the user manual ("User's Guide" or

"manual")[1] that accompanied their printers indicates that each of the color cartridges should print "1500 pages at 5% coverage (A4 or Letter size)" or that each "approx. yields [1500 pages] based on 5% page coverage (Letter)." *Id.* at ¶ 22. "The manual further explains that when the ink has been exhausted in any one particular cartridge a message will be displayed indicating 'toner life end' indicating *which particular color cartridge* must be replaced in order [for] the printer [to] continue to operate." *Id.* (citing User's Guide at 3) (emphasis added). Plaintiffs contend that this statement constitutes both a misrepresentation and an omission—by stating that the light will indicate *which* color needs to be replaces, Defendant misrepresented to purchasers that only one cartridge needed to be replaced and, in terms of an omission, Defendant failed to inform Plaintiffs that all three color cartridges would need to be replaced when one cartridge had reached its toner life end. *See id.* at ¶¶ 22-23.[2] Plaintiffs point to additional physical indicators on the printer itself, and statements in the User Guide, that they allege reinforce this misrepresentation and omission. Those additional facts are discussed in more detail herein.

Dissatisfied with their purchases, and seeking to recoup the unforeseen costs they have incurred, Plaintiffs seek injunctive relief and compensatory damages for themselves and as representatives of a putative class. Plaintiffs seek to establish a nationwide class with state-specific subclasses corresponding to the residences of the Plaintiffs at the time they purchased

---

[1]     Plaintiff attached a copy of the manual, which is titled "Brother's Laser Printer User's Guide," to their complaint. FAC, Exh. A. Because the manual was attached as an exhibit to the complaint, and the Plaintiffs rely upon the manual therein, the Court may consider its contents in ruling on a motion to dismiss. *See In re Rockefeller Center Properties, Inc. Securities Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).

[2]     Plaintiffs also assert that Defendant engaged in an unconscionable practice by "knowing[ly] marketing . . . printers designed to shut down when only one of three color Cartridges is emptied and to remain useless until all three Cartridges have been replaced …." FAC at ¶ 43. Because Defendant does not specifically challenge this alleged unlawful conduct in its motion to dismiss, I do not elaborate further upon that allegation. Nor do I make a ruling as to the legal sufficiency thereof.

their printers:  New Jersey (DiCuio), California (Zadeh), Pennsylvania (Steuer), Illinois (Bryant), Indiana (Pociluyko), and Florida (Self and Albanese).  The causes of action asserted in the FAC are breach of implied and express warranties, breach of covenant of good faith and fair dealing, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq* ("NJCFA") and California, Pennsylvania, Illinois, Indiana, and Florida consumer fraud legislation, as well as violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*  To be clear, the NJCFA claim is asserted by all defendants both individually and as putative class members for the nationwide class whereas the other state consumer fraud claims are asserted only by the plaintiffs who resided in that state at the time of purchase.  Plaintiffs seek to ultimately certify subclasses for those states.  Defendant now moves to dismiss all the claims asserted in the FAC.

## II.      STANDARD OF REVIEW

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  *In Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 1968 (quoting *Conley*, 355 U.S. at 45-46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. As

the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating … a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 127 S.Ct. at 1965).

In affirming that *Twombly* standards apply to all motions to dismiss, the Supreme Court recently explained the principles. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler*, 578 F.3d at 211.

## III.  DISCUSSION

As noted, Plaintiffs bring several causes of action against Defendant:  breach of implied and express warranties, breach of covenant of good faith and fair dealing, violations of the NJCFA and other states' consumer fraud statutes, including violations of the CLRA.  Because the NJCFA claim is asserted by all defendants both individually and as putative class members for the nationwide class, I address that claim first.  I then turn to other states' consumer fraud statutes and the CLRA.  Finally, I address the remaining state law claims.

5

## A.    NJCFA

The New Jersey Consumer Fraud Act proscribes certain misrepresentations and omissions by commercial sellers.  It expressly bars

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise,  misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.  "To state a cause of action under the [NJ]CFA, a plaintiff must allege: (1) an unlawful practice by the defendants; (2) an ascertainable loss by plaintiff; and (3) a causal nexus between the first two elements—defendants' allegedly unlawful behavior and the plaintiff's ascertainable loss."  *Arcand v. Brother Intern. Corp.*, 673 F.Supp.2d 282, 296 (D.N.J. 2009) (quoting *Parker v. Howmedica Osteonics Corp.*, No. 07–02400 (JLL), 2008 WL 141628, at *2 (D.N.J. Jan. 14, 2008)).

As the NJCFA is a fraud-based statute, the heightened pleading standard of Rule 9(b) applies.  *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994).  In *Frederico v. Home Depot*, 507 F.3d 188 (3d Cir. 2007), the court elucidated what must be alleged to satisfy this heightened pleading standard:

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

6

*Id.* at 200 (internal citations omitted).  With these precepts in mind, I now turn to the elements of Plaintiffs' NJCFA claim.

### 1.        Unlawful Conduct

The common thread that pervades all types of unlawful conduct under the NJCFA is "[its] capacity to mislead."  *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17, 647 A.2d 454 (1994) (citing *Fenwick v. Kay Am. Jeep, Inc.*, 72 N.J. 372, 378, 371 A.2d 13 (1977)).  Apart from this common characteristic, however, there are several differences between misrepresentations and omissions.  *See Leon v. Rite Aid Corp.*, 340 N.J.Super. 462, 468, 774 A.2d 674 (App. Div. 2001) ("This statutory scheme distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act").  For one, misrepresentations do not require a showing of intent or even actual deceit or fraud.  *Cox*, 138 N.J. at 17-18; *Leon*, 340 N.J.Super. at 468.  *See also Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 605, 691 A.2d 350 (1997) ("One who makes an affirmative misrepresentation is liable even in the absence of knowledge of the falsity of the misrepresentation, negligence, or the intent to deceive.")  Moreover, the misrepresentation need not be one of material fact.  *Arcand*, *supra* at 297.  In contrast, omissions consist of (1) knowingly concealed (2) material facts (3) concealed with the intention that the consumer rely upon the concealment.  *Judge v. Blackfin Yacht Corp.*, 357 N.J. Super. 418, 426, 815 A.2d 537 (App. Div. 2003) (citing *Feinberg v. Red Bank Volvo, Inc.*, 331 N.J.Super. 506, 511, 752 A.2d 720 (App. Div. 2000)).

Here, Plaintiffs allege that Defendant misrepresented that, when a "toner life end" signal is displayed on the printer, only the color cartridge designated in the signal need to be replaced in order for the printer to continue printing in color:

> The manual . . . explain[s] that if, for example, a light turns on above the letter "y" in a certain panel, it will indicate that the

> yellow ink has been used up and that it must be replaced with a new cartridge containing yellow ink.  . . . The manual further explains that when the ink has been exhausted in any one particular cartridge a message will be displayed indicating "toner life end" indicating which particular color cartridge must be replaced in order that the printer continue to operate.  Thus, both the printer itself and the messages it provides on its panel and the user manual leave [sic] the consumer to believe that when the ink of any one color has been used up, replacement of that color alone will be sufficient to restore the printer to its full capabilities. In fact, this is untrue.

FAC at ¶ 22, 24.  Seemingly as the flip side of this same coin, Plaintiffs allege that Defendant knowingly concealed, *i.e.,* omitted, that all three color toner cartridges would need to be replaced in order to restore full functionality once one cartridge is exhausted.  *Id.* at ¶ 43 ("The failure to state the nature of the design of the Printers with respect to the need to replace three Cartridges when only one has been exhausted represents an omission of material fact.")

As an initial matter, I address Defendant's general argument that Plaintiffs' NJCFA claim mimics that already rejected by my decision in *Arcand*, *supra*, another Brother printer case which held that a plaintiff who purchases a printer with the belief that he or she is entitled to receive a certain number of specified pages from each toner cartridge must plead specific facts averring, *inter alia*, what print setting the plaintiff used, how many pages the plaintiff was able to print with the cartridge, and what types of documents the plaintiff printed.[3]  *Arcand*, 673 F.Supp.2d at 301.  According to Defendant, the rationale underlying my decision in *Arcand* was that a printer user manual that states how many pages a user may receive does not *guarantee* that a user will receive a set number of pages but, rather, provides an estimate of how many pages the

---

[3]      As an aside, the Court notes that while Defendant seems to suggest in its briefing that there have been other similar decisions on the merits, none of the cases cited by Defendant (other than *Arcand*) resulted in published or unpublished decisions.  The bulk of the cases were either voluntarily withdrawn by the plaintiffs or otherwise resolved.  Hence I limit my discussion of Defendant's argument to the *Arcand* case.

8

user can expect to receive when printing certain types of documents with certain settings. Thus, a user who complains of receiving less than he or she bargained for must allege the above-listed particularized facts to support his or her theory. *See* Def. Open. Br. at 1, n.1.

Contrary to Defendant's argument, *Arcand* does not dictate the result here. As Defendant acknowledges, *Arcand* held that the plaintiffs in that case sufficiently plead unlawful conduct yet I dismissed the NJCFA claim on ascertainable loss grounds. It is clear from my decision that my requiring more particularized facts related solely to the plaintiffs' ascertainable loss allegations:

> Plaintiffs do not allege what they did receive, *i.e.*, an amount of pages less than what the manual stated, nor do they allege what spurred them to believe that the printer and its cartridges were supposed to produce more than promised in the user manual. Thus, this Court cannot determine what loss, if any, Plaintiffs sustained as they fail to allege in the Complaint any particulars as to their own experiences with [Defendant's] printers and cartridges.

*Id.* at 301. My decision, further, granted those plaintiffs the opportunity to replead "since Plaintiffs could potentially plead ascertainable loss by providing this Court with factual allegations concerning their individual experiences with their printers and the number of pages they received." *Id.* at 303. The plaintiffs repled, but still failed to sufficiently allege their ascertainable losses and I dismissed their amended claims with prejudice. *See Arcand v. Brother Intern. Corp.*, Civil Action No. 3:07–cv–4987, 2010 WL 3907333, *11 (D.N.J. Sept. 29, 2010). In connection with my ascertainable loss analysis in that second decision, I noted that there were no allegations to support Plaintiffs' theory that Defendant guaranteed them a certain number of printed pages per cartridge. *Id.*

Here, unlike the plaintiffs in *Arcand*, Plaintiffs have not hinged their suit on the number of pages they expected to receive per cartridge. Their NJCFA claim is rooted in the User Guide's representation that when the "toner life end" signal with the accompanying designation of a letter

corresponding to one cartridge color is displayed, only that specific cartridge need be replaced—not also the other two undesignated color cartridges.   As I read Plaintiffs' First Amended Complaint, they allege the number of pages listed in the User's Guide for each cartridge solely to further support their alleged reasonable belief that they would need to replace a cartridge only when that cartridge's contents were exhausted, as indicated by the signal on the printer.   In other words, Plaintiffs' allegations essentially ask the question:  if all three color toner cartridges must be replaced when one cartridge is depleted, regardless of the depletion level of the other two cartridges, then why would Defendant state in the User Manual that *each* color cartridge will print up to 1,500 pages?  While the page-specific allegations in the FAC may appear somewhat inartly drafted, Plaintiffs' allegations, when read as a whole, present unmistakably distinguishable allegations from those in *Arcand*.

Though the allegations differ, there is one noteworthy similarity worth mentioning between *Arcand* and the instant complaint:  both sets of plaintiffs sufficiently pled unlawful conduct under the NJCFA.   The plaintiffs in *Arcand* alleged that Defendant "formatted its printers with a function that would compel its customers to prematurely and unnecessarily buy more of its toner cartridges" and I held that, assuming such allegations were true, the plaintiffs sufficiently pled that Defendant misrepresented that its cartridges were empty when, in fact, they were not.  *Id.* at 299.  Likewise, here, Plaintiffs allege that Defendant designed its printers with a function that would compel its customers to prematurely and unnecessarily buy two additional color toner cartridges each time one color cartridge was exhausted.  In my view, these allegations are also sufficient to allege unlawful conduct under the NJCFA.  "Affirmative acts prohibited by the Consumer Fraud Act, including conduct such as alleged in our situation, require no showing of intent." *Gross v. Johnson & Johnson–Merck Consumer Pharm.*, 303 N.J.Super. 336, 346, 696

A.2d 793 (Law Div. 1997) (citing *Cox*, 138 N.J. 2, 647 A.2d 454).  Moreover, the alleged

statements are not factually accurate and were made in the connection or sale of merchandise.

Therefore, I conclude that Plaintiffs have sufficiently alleged a misrepresentation constituting

unlawful conduct under the NJCFA.[4]

## 2.    Ascertainable Loss

Defendant spends significant time in its briefing on the ascertainable loss element.  The

term "ascertainable loss" is found in the text of the NJCFA, which provides that

> [a]ny person who suffers any *ascertainable loss* of moneys or
> property, real or personal, as a result of the use or employment by
> another person of any method, act, or practice declared unlawful
> under this act . . . may bring an action or assert a counterclaim
> therefor in any court of competent jurisdiction.

N.J.S.A. 56:8–19 (emphasis added).  To demonstrate an ascertainable loss, the plaintiff must

establish an "actual loss," that is "quantifiable or measurable," or "real and demonstrable," as

opposed to "hypothetical or illusory" or "speculative."  *Thiedemann v. Mercedes-Benz, USA,*

*LLC*, 183 N.J. 234, 248, 252, 255, 872 A.2d 783 (2005).

While I have previously noted that "[t]here is little that illuminates the precise meaning

that the Legislature intended in respect of the term 'ascertainable loss' in [the NJCFA], and New

Jersey courts have been chary to ascribe the term a precise meaning," *Arcand*, *supra* at 300, there

are several guiding precepts that make its application simple in this case.  In NJCFA cases, the

New Jersey Supreme Court has indicated that the rule governing the measurement of damages

should be "flexible" depending on the circumstances.  *Zeliff v. Sabatino*, 15 N.J. 70, 75 (1954)

(internal quotation marks and citation omitted).  In this connection, the Court has explained that

there are generally two methods by which a plaintiff may prove loss—the benefit-of-the-bargain

---

[4]    Because I conclude that Plaintiffs sufficiently allege a misrepresentation, I do not address
whether their allegations sufficiently allege a knowing omission of material fact.

rule, or the out-of-pocket rule. *Id.* at 75; *Thiedemann*, 183 N.J. at 248. *See also Marcus v. BMW of North America, LLC*, --- F.3d ----, 2012 WL 3171560 at *18 (3d Cir. 2012). The out-of-pocket rule applies when a plaintiff can demonstrate that he paid money, and is now, out-of-pocket. The benefit-of-the-bargain rule applies when a plaintiff cannot demonstrate an out-of-pocket loss, but seeks to recoup what it will cost for him to replace what he reasonable believed he was purchasing. *See Furst v. Einstein Moomjy, Inc.*, 182 N.J. 1, 18-19 (2004). *See also Onyx Acceptance Corp. v. Trump Hotel & Casino Resorts, Inc.*, 2008 WL 649024, *17 (N.J. App. Div. Mar. 12, 2008) ("[I]n cases involving the purchase of goods or services, an ascertainable loss is established where the plaintiff receives 'something less than, and different from,' what he or she reasonably expected to receive.") (citing *Miller v. Am. Family Publishers*, 284 N.J.Super. 67, 87-91, 663 A.2d 643 (Ch. Div. 1995)).

Here, Plaintiffs proceed under an out-of-pocket theory of recovery. Plaintiff DiCuio alleges that he expended $640 in "new toner color cartridges for the other two colors" as he was forced to purchase those additional cartridges "multiple times" during his ownership of the printer. FAC at ¶ 3. Similarly, Plaintiff Bryant alleges that she spent "$1,053.86 in toner for the printer over the course of approximately one year from April 2010 to September 2011." *Id.* at ¶ 8. And, Plaintiff Steuer incurred $337.67 in out-of-pocket costs. *Id.* at ¶ 9. The remaining Plaintiffs—Self, Albanese, Zadeh, and the Pociluykos—also allege that they purchased two non-exhausted toner cartridges each time a toner life end message indicated that one color was exhausted, however, these plaintiffs do not specify the exact amount they spent. *See id.* at ¶¶ 4-7. While these latter plaintiffs do not specify the exact amount that they expended for the color toner cartridges that were not depleted, the exact amount need not be plead in the complaint but can be established by proofs later in the proceeding. *See Thiedemann*, *supra* at 249 (noting that

12

ascertainable loss "must be presented with some certainty demonstrating that it is capable of calculation, although it need not be demonstrated in all its particularity to avoid summary judgment.");  *Kleinman v. Merck & Co., Inc.*, 417 N.J.Super. 166, 182 (Law. Div 2009) ("[T]he precise amount of damages need not be known as long as the damages are measurable.").

Defendant's contention that these allegations are insufficient is based on its unfounded assumption that Plaintiffs proceed under a benefit-of-the-bargain theory like the plaintiffs in *Arcand*.  Defendant argues in its briefing that alleging the "price of replacement toner cartridges that they used for printing, without describing the performance they received from the cartridge being replaced" fails to pled ascertainable loss because Plaintiffs must "quantify the difference in value between the promised product and the actual produc[t] received."  Def. Reply at 10 (quoting *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, --- F.Supp.2d ----, 2011 WL 4414214, *7 (D.N.J. Sept. 21, 2011).[5]  I noted, in *Arcand*, that the plaintiffs in that case alleged a benefit-of-the-bargain theory in their amended complaint by averring that "he or she [bought] a cartridge that secretly has a fixed life, while perhaps for the same price at the same rated yield, the cartridges of some other manufacturers do not interfere with the use of all of the toner and do not arbitrarily limit use."  *Arcand*, 2010 WL 3907333 at *10.

Here, unlike the plaintiffs in *Arcand*, Plaintiffs have alleged that they incurred out-of-pocket costs as a result of Defendant's misrepresentations as to the need to replace non-exhausted color toner cartridges.  As such, the FAC here must be assessed in accordance with case law

---

[5]     Defendant appears to base its belief that Plaintiffs are proceeding under a benefit-of-the-bargain theory on a statement in Plaintiffs' opposition brief that "the value of Plaintiffs' Cartridges and Printers is diminished because they are not receiving the represented yield of the toner."  Opp. at 11.  Whatever is to be made of this statement, my analysis focuses on the allegations in the FAC and not on statements in Plaintiffs' brief.  *See Bell v. City of Philadelphia*, 275 Fed.Appx. 157, 160 (3d Cir. 2008) (noting that a plaintiff cannot amend the complaint through briefing).

addressing out-of-pocket losses rather than, as Defendant would have it, benefit-of-the-bargain cases.   It is the plaintiff's theory of loss, as set forth in the complaint, that dictates which ascertainable loss formula loss applies at the motion to dismiss stage.

In *Lee v. Carter-Reed Co., L.L.C.*, 203 N.J. 496 (2010), the New Jersey Supreme Court explained that the purchase price of a product constitutes an out-of-pocket loss.  *Id.* at 528. Similarly, in my recent decision in *Hammer v. Vital Pharmaceuticals, Inc.*, Civil Action No. 11– 4124, 2012 WL 1018842 (D.N.J. Mar. 26, 2012), I concluded that a purchaser of a dietary supplement misled by the seller's statement that the supplement had been "certified by science" sufficiently pled ascertainable loss under the NJCFA by asserting that he paid the purchase price for the product and that he "would not have purchased" the product but for the Defendant's allegedly false statement.  *Id.* at *9.  So too, here, I conclude that Plaintiffs have sufficiently pled out-of-pocket losses under the NJCFA by asserting that they expended funds to purchase additional color toner cartridges to replace the non-exhausted cartridges.

### 3.      Causal Nexus

Finally, Defendant argues, *albeit* in summary fashion, that Plaintiffs have failed to allege a causal nexus between their alleged loss and the alleged misrepresentation.  Defendant draws, again, from *Arcand,* pointing to language in that opinion that, to allege a causal nexus in a manner consistent Rule 9's heightened pleading standard, plaintiffs must assert when the alleged misrepresentations "were made or when the plaintiffs were exposed to the statements."  673 F.Supp.2d at 303 (quoting *Dewey v. Volkswagen*, 558 F.Supp.2d 505, 526 (D.N.J. 2008)). Surprisingly, Defendant does not appear to acknowledge in its papers that the above-quoted language in *Arcand* is actually a quote from another decision that I referenced in setting forth the black letter law; the quote does not express *Arcand's* holding.  *See id.*

Defendant fails to acknowledge my actual holding in *Arcand* that the plaintiffs in that case *had* sufficiently pled causal nexus by asserting "that they would not have purchased new cartridges for their . . . printers had it not been for [the] misrepresentations that the toner cartridge is empty." *Id.* at 304. While there are other differences between *Arcand* and this case, noted *supra*, the allegations of causal nexus here mirror those in *Arcand*. Plaintiffs assert that "[h]ad [they] known of the products defect, *i.e.* that it is necessary to replace all three color Cartridges when the ink in only one has been exhausted, they would not have purchased the products." FAC at ¶ 62.[6] Hence I find it perplexing that Defendant would point to *Arcand* in support of its contention that Plaintiffs have not sufficiently alleged a causal nexus here. Contrary to Defendant's argument, I conclude that Plaintiffs have met their pleading obligation.[7]

**B.     Other State Consumer Fraud Statutes**

Defendant's challenge to Plaintiffs' California, Pennsylvania, Illinois, Indiana, and Florida consumer fraud claims is derivative of its NJCFA challenge in that Defendant argues that Plaintiffs have failed to sufficiently allege actual losses "[f]or the same reasons Plaintiffs fail to

---

[6]     While this allegation is made in the context of Plaintiffs' CLRA claim, the Court considers Plaintiffs' FAC in its entirety. *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 74 (2011) ("When considering the sufficiency of a pleading on motion to dismiss, a court must determine whether the complaint as a whole contains sufficient factual matter to state a facially plausible claim ….")

[7]     Finally, I note Defendant's argument that the printer does not become completely inoperable when the toner life end message appears because the user can still choose to print in "mono" (black only) mode. This is beside the point. Plaintiffs allege that the User's Guide creates the inaccurate perception that replacing only the one depleted cartridge will restore the printer to its "full capabilities." FAC at ¶ 24. I read this allegation as meaning that the user is led to believe that he can continue to print in black *or in color* after replacing the one depleted cartridge. For this reason, it is irrelevant whether Plaintiffs alleged the print setting to which they set their printers once the toner life end message was displayed, and I need not address the parties' arguments relating to Plaintiffs' attempt to supplement the FAC by specifying the print setting via declarations accompanying their opposition papers. In my ruling, I rely on the FAC allegations and not their certifications.

allege an ascertainable loss under the NJCFA …." Def. Open. Br. at 36.  Because I conclude that Plaintiffs have sufficiently pled ascertainable loss, Defendant's challenge to these claims necessarily fails.

### C.      Remaining State Law Claims

Defendant next challenges Plaintiffs' express and implied warranty, and breach of covenant of good faith and fair dealing, claims, along with Plaintiffs request for injunctive relief. For the implied warranty claim, Plaintiffs concede that this claim must be dismissed.  Pl. Opp. at 20.  As for the other claims, however, the Plaintiffs dispute dismissal.  Applying New Jersey law[8], I conclude that dismissal is also appropriate on Plaintiffs' breach of express warranty, breach of the covenant of good faith and fair dealing, and injunctive relief claims.

### 1.      Breach of Express Warranty

"Express warranties in New Jersey are governed by Article 2 of the state's Uniform Commercial Code." *Henderson v. Volvo Cars of North America, LLC*, Civ. Action No. 09–4146(DMC), 2010 WL 2925913 at * 7 (D.N.J. Jul. 21, 2010) (citing N.J.S.A. 12A:2–101 *et seq*). Section 2–313 provides, in pertinent part:

> (1) Express warranties by the seller are created as follows:

> > (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> > (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. 12A:2-313.

---

[8]      I apply New Jersey to these state law claims as the parties do not dispute application of the law of the forum state for purposes of this motion.

To adequately plead a breach of express warranty claim under New Jersey law a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Cooper*, 374 Fed.Appx. at 253 (quoting *Frederico*, 507 F.3d at 203).   As suggested by this recitation of the elements of a breach of express warranty claim, the threshold consideration is whether there exists a contract between the parties.   Plaintiffs allege that the operative "contract" is found in "both the materials provided with the purchase of Printers sold by the Defendant and replacement color Cartridges sold in that the color Cartridges …."  FAC at ¶ 30.  In other words, Plaintiffs contend that the User's Guide and the printer and cartridge product packaging formed an agreement that serves as the basis for their express warranty claim.

Defendant, in contrast, argues that the Limited Warranty[9] attached to Plaintiffs' Complaint is the only express contract entered into between the parties and, importantly, that warranty expressly disclaims any additional express warranties.   Defendant is correct that the Limited Warranty makes clear that it "is the only warranty that Brother is giving for [the printer]. It is the final expression and the exclusive and only statement of Brother's obligations to you." FAC, Exh. F at col. 4.  The warranty further, and exhaustively, provides:

> THIS WARRANTY IS GIVEN IN LIEU OF ALL OTHER WARRANTIES, WRITTEN OR ORAL, WHETHER EXPRESSED BY AFFIRMATION, PROMISE, DESCRIPTION, DRAWING, MODEL OR SAMPLE.   ANY AND ALL WARRANTIES OTHER THAN THIS ONE, WHETHER EXPRESS OR IMPLIED, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HEREBY DISCLAIMED.

*Id.*

---

[9]     Plaintiffs do not dispute that this Court may consider the terms of this document on the instant motion to dismiss because it is integral and, indeed, attached to, their complaint.

New Jersey law generally recognizes disclaimers, *see* N.J.S.A. 12A:2-316, and will enforce them as long as they are clear and conspicuous. *See Realmuto v. Straub Motors, Inc.*, 65 N.J. 336, 341-42 (1974); *see also Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462, 470 (D.N.J. 2007) ("Disclaimers of express warranties must be clear and conspicuous."); 27 N.J.Prac. §2-316, Form 1 (compiling New Jersey case law).  Here, I conclude that the Limited Warranty language—particularly, the language in all caps—conspicuously disclaims any other express warranty other than the Limited Warranty itself. *Accord Viking Yacht*, *supra* at 470. Plaintiffs have not alleged that this language was hidden on the back side of the warranty, or otherwise obscured. *Compare Realmuto*, 65 N.J. at 341-42.  Nor have they argued that, even if the language is clear and conspicuous, the disclaimer should nonetheless be deemed unenforceable because it is "unreasonably inconsistent" with the express warranties given. *Compare Viking Yacht*, *supra* at 470-71 (holding that summary judgment was inappropriate because disclaimer of express warranty based on extra-warranty promise was inoperable in light of vagueness of the express warranty language and the potential that the breadth of the express warranty would encompass the challenged misrepresentation); *see Viking Yacht Co., Inc. v. Composite One, LLC*, 385 Fed.Appx. 195 (3d Cir. 2010) (discussing in the context of reviewing the district court's jury instructions on the express warranty claim, the district court's earlier summary judgment ruling on that same claim).

Plaintiffs' primary approach to opposing the disclaimer is to cite the general law that warranty disclaimer language "must be construed against the seller," Pl. Opp. at 16 (quoting *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 373 (1960)), but these general cites are not

helpful; they do not elucidate whether the instant disclaimer is clear and conspicuous.[10]  Because I find the disclaimer language clear on its face, and Plaintiffs have not otherwise pointed to an unreasonable inconsistency,[11] I hold that the Limited Warranty disclaims any other oral or written express warranties and, consequently, treat Plaintiffs' breach of warranty claim as asserting a breach based upon the written warranty rather than the User's Guide and printer and cartridge product packaging.[12]

Focusing solely on the Limited Warranty, then, it is clear that Plaintiffs' express warranty claim must be dismissed.  New Jersey has adopted the Uniform Commercial Code's ("UCC") notice requirement for an express warranty claim. *Luppino v. Mercedes–Benz USA, LLC*, Civ. Action No. 09–5582, 2011 U.S. Dist. LEXIS 65495, at *7, 2011 WL 2470625 (D.N.J. Jun. 20,

---

[10]      Plaintiffs further argue that the Limited Warranty is "defective" because the warranty covers only "defects and materials in workmanship" and that a reasonable consumer might presume that the warranty is made with Defendant's Japanese manufacturing entity, Brother Industries, Ltd., of Nagoya, Japan, as opposed to Defendant itself.  Putting aside that Plaintiffs have not cited any case law or other authority in support of this argument, Plaintiffs themselves acknowledge that Defendant is designated as the copyright holder on the warranty, thus, the Court finds Plaintiffs' argument specious and wholly without merit.

[11]      In this regard, I question whether Plaintiffs could reasonably argue that the alleged promise—that a purchaser would be required to replace each independent color toner cartridge only once a "toner life end" message for that specific cartridge is displayed—is inconsistent with an express warranty that covers only defects in material or workmanship.  Underlying Plaintiffs' allegations is not that the "toner life end" message displays in error, but that the printer was intentionally designed to operate in such a fashion to force users to purchase the additional two color cartridges.  Indeed, that Plaintiffs do not assert that the printer is defective serves as a separate basis for dismissing their breach of express warranty claim.  *See Cooper, supra* at 243-54 (affirming dismissal of claim where "the plain language of the Warranty covers only 'manufacturing defects in materials and workmanship encountered in normal . . . noncommercial use of this product.'  Cooper does not allege a manufacturing defect; indeed, he agrees his TV was manufactured as designed. His complaint is that the design deviated from Samsung's advertisements and packaging.").

[12]      Because I conclude that Defendant disclaimed all other express warranties, I make no ruling on the parties' arguments as to whether Plaintiffs sufficiently alleged an express warranty based upon the User Guide or other documents pursuant to N.J.S.A. 12A:2-313.

2011); *Joc, Inc. v. Exxon mobil Oil Corp.*, Civ. Action No. 08–5344, 2010 WL 1380750, at *4 (D.N.J. Apr.1, 2010); *Slack v. Suburban Propane Partners, L.P.*, Civ. Action No. 10–2548, 2010 WL 5392845, at *4–5 (D.N.J. Dec. 22, 2010). The notice requirement provides: "Where a tender has been accepted ... the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.J.S.A. 12A:2–607(3)(a). Based upon this language, this statutory notice is a "condition precedent to filing any suit for breach of warranty." *Joc*, 2010 WL 1380750 at *4.

In this connection, the Third Circuit in *Cooper, supra*, upheld the dismissal of a New Jersey express warranty claim, similar to that alleged here, where the plaintiff alleged that Samsung, a television manufacturer, misrepresented that its television was able to receive a 1080p signal via its HDMI input. In that case, the Samsung warranty provided that "[t]o receive warranty service, the purchaser must contact SAMSUNG for a problem determination and service procedures." *Cooper*, 374 Fed.Appx. at 253. The circuit held that the plaintiff's claim was subject to dismissal because he did not allege that he supplied that requisite notice to Samsung during the warranty period. *Id.* at 253-54.

Likewise, here, Plaintiffs have not alleged that they provided the notice required by the Limited Warranty to Defendant. The warranty directs consumers to "[r]eport your issue to either our Customer Service Hotline . . . for Printers, or to a Brother Authorized Service Center **within the applicable warranty period**", FAC, Exh. F at col. 2 (emphasis in original), which is within "one year from the original purchase date." *Id.* at col. 1. *See also id.* at col. 2-3 ("If the problem reported . . . is covered by this warranty *and if you first reported the problem . . . within the applicable warranty period*, Brother . . . will evaluate your report of a possible defect ....") (emphasis added). Plaintiffs have not alleged that they reported their complaints to Defendant

within one year of purchasing their printers, thus, as was the result for the plaintiff in *Cooper*, Plaintiffs' express warranty claim here must be dismissed.[13]

### 2.      Breach of Covenant of Good Faith and Fair Dealing

The New Jersey Supreme Court "has determined that the implied duty of good faith and fair dealing means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the full fruits of the contract; in other words, in every contract there exists an implied covenant of good faith and fair dealing." *R.J. Gaydos Ins. Agency, Inc. v. National Consumer Ins. Co.*, 168 N.J. 255, 277 (2001) (quoting *Association Group Life, Inc. v. Catholic War Veterans*, 61 N.J. 150, 153 (1972)) (internal quotation marks omitted).   Through this doctrine, a court may impose conditions of fairness and justice where explicit contractual language effecting such considerations is lacking:   "Where fairness and justice require, even though the parties to a contract have not expressed an intention in specific language, the courts may impose a constructive condition to accomplish such result when it is apparent that it is necessarily involved in the contractual relationship."   *Id.* (quoting *Palisades Properties, Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)).   In short, the doctrine "permits the inclusion of terms and conditions which have not been expressly set forth in the written contract." *Seidenberg v. Summit Bank*, 348 N.J.Super. 243, 257 (App. Div. 2002).   In addition, the doctrine allows "redress for the bad faith performance of an agreement even when the defendant has not breached any express term."   *Id.*   Moreover, it permits "inquiry into a party's exercise of discretion expressly granted by a contract's terms." *Id.*

To adequately plead a breach of the implied covenant of good faith and fair dealing claim, a plaintiff must allege that the parties entered into an express or implied contract.   *Wade v.*

---

[13]      Because I conclude that the breach of express warranty claim must be dismissed for lack of notice, I do not discuss Defendant's other arguments in support of dismissal of that claim.

*Kessler Institute,* 172 N.J. 327 (2002).[14]  District of New Jersey cases have countenanced breach of implied covenant claims based on "a contractual relationship with Defendants in the form of the written warranty included with . . . purchase …."  *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.,* Civ. Action No. 11-4429, 2012 WL 1574301, *12 (D.N.J. May 3, 2012); *see also Payne v. Fujifilm U.S.A., Inc.*, Civil Action No. 07-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007).  But, here, Plaintiffs do not allege that the express warranty formed the contractual relationship between it and Defendant.

Indeed, it is not clear from the FAC what agreement Plaintiffs allege form the basis for the parties' contractual relationship.  The FAC refers generally to an "agreement to purchase" in the context of the breach of implied covenant claim:

> Plaintiffs and other Class members agreed to buy the Printers and Cartridges from the Defendant.  Within this agreement to purchase there was an implied covenant that the Defendant would conduct its business with consumers in good faith and would deal fairly with the Plaintiffs and other Class members.

FAC at ¶ 36.  Elsewhere in the FAC, however, Plaintiffs rely extensively upon the User Guide, and they appear to argue in their opposition brief that the User Guide could form the basis for

---

[14]     Plaintiffs cite *Payne v. Fujifilm U.S.A., Inc.*, Civil Action No. 07-385, 2007 WL 4591281 (D.N.J. Dec. 28, 2007), for the proposition that they are not required to allege any specific contractual relationship.  Although *Payne* contains dicta that could be read to support Plaintiffs' contention, *i.e.,* "[t]he lack of contractual relationship or privity does not automatically defeat a[n implied covenant] claim."*,* 2007 WL 4591281 at *10 n.7, the complaint in *Payne* specifically averred that a written express warranty formed the parties' contractual relationship in that case. Moreover, the New Jersey Supreme Court in *Wade*, *supra*, expressly rejected the argument that an implied covenant claim could lie absent an express or implied agreement.  172 N.J. at 345 ("To the extent plaintiff contends that a breach of the implied covenant may arise absent an express or implied contract, that contention finds no support in our case law.")  "In the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Id.* (quoting *Noye v. Hoffman-LaRoche, Inc.*, 238 N.J.Super. 430, 434 (App.Div.), *certif. denied*, 122 N.J. 146 (1990)).

their implied covenant claim.  *See* Pl. Opp. at 23 ("The consumer's expectation would clearly be that the printer's cartridge would print at least 1500 pages of color, since even Defendant's manual concedes that to be the case upon which the printer was sold.")  Hence, for purposes of this analysis, I construe the complaint as alleging that the User Guide formed a contractual relationship between the parties.[15]

Plaintiffs assert that Defendant "breached [the] implied covenant by selling to the Plaintiffs and other Class members Printers and Cartridges which were inherently defective in that the exhaustion of any one of three color Cartridges would require the replacement of all three color Cartridges."  FAC at ¶ 38.  Reading this allegation in connection with the User Guide's estimate that a user can expect to print up to 1,500 pages per color, Plaintiffs appear to be asserting that Defendant acted in bad faith when it made the statement in the User Guide because it knew that, by virtue of the toner life end mechanism, the printer would cease printing in color until all three color cartridges were replaced.

If this is, indeed, what Plaintiffs intend to assert—that Defendant violated its duty to act in good faith by making such an misrepresentation—that sort of an allegation would not sufficiently state a breach of implied covenant of good faith and fair dealing claim under New Jersey law.  As explained by the New Jersey Supreme Court in *Wade*, *supra*, an implied covenant of good faith claim cannot be based on a defendant's violation of an express contract term.  172 N.J. at 344 (noting that complaint allegations "erroneously suggests that in breaching a literal term of the [employment] manual, defendant also could be found separately liable for breaching the implied covenant of good faith and fair dealing when the two asserted breaches basically rest on the same conduct."); *id.* ("[T]he breach of the implied covenant arises when the

---

[15]     This is the only remaining potential contract as I have already dismissed the express warranty claim, and Plaintiffs agreed to the dismissal of their implied warranty claim.

other party has acted *consistent* with the contract's literal terms, but has done so in such a manner so as to 'have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'")

Moreover, while Plaintiffs appear to suggest that an electronic equipment's user guide creates a contractual relationship between them and Defendant, they have not cited to any legal authority for such a proposition.  This Court's research revealed only one case addressing this sort of allegation, *Donohue v. Apple, Inc.*, --- F.Supp.2d ----, 2012 WL 1657119 (N.D.Cal. May 10, 2012).  The plaintiff in *Donohue* challenged an alleged misrepresentation in Apple, Inc.'s ("Apple's"), iPhone user manual that the signal meter on his phone would accurately depict signal strength.  *Id.* at *12.  He, specifically, argued that the user manual created an implied agreement to provide a working signal meter by stating that the "that the signal meter ... can be properly used to trace whether the user is within sufficient range of the cellular network."  *Id.*

Rejecting the plaintiff's argument that the manual could create an implied agreement, the court set forth several compelling reasons why that result did not attend under California law.  First, the court reasoned, the user manual did not contain any "promises" that plaintiff could have "accepted," but expressly stated that it merely provided directions for using the iPhone and described the phone's functions.  *Id.*  Second, the court found it critical that the plaintiff did "not even allege that he saw the [manual] before purchasing his iPhone, further undermining his claim that he accepted its terms as part of a contract of sale."  *Id.*  Finally, the court noted, nothing in the manual "reasonably suggest[s] that Apple intended to be bound by its provisions, which include wide-ranging instructions on topics like 'sending voice memos' and 'adding calendar events."  *Id.*  In short, the manual contained none of the indices of an offer, acceptance, or mutual assent.  In terms of the implication of holding otherwise, the court further noted that "[o]n these

24

facts, adopting the position that an instructional manual is a contract would vastly expand the scope of a manufacturer's express and implied warranties, creating a perverse incentive for manufacturers to avoid including comprehensive manuals with their products."  *Id.* at *14. Because the court concluded that the plaintiff did not sufficiently pled the existence of an agreement between himself and Apple, the implied covenant claim necessarily failed.  *Id.* at *16.

I find *Donohue*'s rationale persuasive here.  As explained by the New Jersey Supreme Court long ago, and relied upon by a court in this district to reject insufficiently pled implied contract allegations:

> [A] contract does not come into being unless there be a manifestation of mutual assent by the parties to the same terms; and, while the manifestation of mutual assent is usually had by an offer and an acceptance either in words or by conduct, it is elementary that there can be no operative acceptance by acts or conduct unless the offeree's assent to the offer according to its terms is thereby unequivocally shown. There must needs [sic] be an agreement—a "meeting of the minds" on the subject matter, to use a classic timehonored term, or there is no legally enforceable obligation. An expression of assent that modifies the substance of the tender, while it may be operative as a counter-offer, is yet not an acceptance and does not consummate a contract. In the very nature of a contract, acceptance must be absolute. If the contemplated agreement is to be bilateral, the "offeror and offeree, alike, must express agreement as to every term of the contract. The offeror does this in the offer; the offeree must do it in his acceptance." Such is the nature of the contract.

*South Jersey Hosp., Inc. v. Correctional Medical Services,* Civ. Action No. 02-2619 (JBS), 2005 WL 1410860, *3 (D.N.J., June 15, 2005) (quoting *Johnson & Johnson v. Charmley Drug Co.,* 11 N.J. 526, 539 (1953)) (internal citations omitted).  As this statement of the law makes clear, there must be unequivocal assent by both parties before a contract will be implied from the parties' statements or conduct.  Here, as in *Donohue*, Plaintiffs have not alleged that there is any

such unequivocal language in the User's Guide, nor have they alleged that Defendant demonstrated through its conduct that it intended to be bound by the terms of the guide. Accordingly, I conclude that Plaintiffs have not sufficiently pled an agreement that could form the basis for an implied covenant of good faith claim and, consequently, their claim must be dismissed.

### 3.    Injunctive Relief

Lastly, Defendant argues that Plaintiffs' claim for injunctive relief must be denied if the Court dismisses all of Plaintiffs' other claims.  Needless to say, since I have not dismissed Plaintiffs' NJCFA claims, nor the other state consumer fraud statute claims, Defendant's argument cannot carry the day.  Indeed, Plaintiffs argue in their opposition that their injunctive relief claim, while separately pled, is rooted in their state consumer fraud claims.

Defendant additionally argues that Plaintiffs lack Article III standing to assert injunctive relief claims because they are now aware of Defendant's product design that is allegedly inconsistent with Defendant's representations and Plaintiffs, therefore, cannot assert that they will suffer future injury if the injunction—which would enjoin Defendant from selling more printers and cartridges "without the requisite disclosures"—is not granted.  FAC at ¶ 89.  "In order to have Article III standing to sue, a plaintiff bears the burden of establishing '(1) [an] injury-in-fact ... that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) [a likelihood] ... that the injury will be redressed by a favorable decision." *McNair v. Synapse Group Inc.*, 672 F.3d 213, 223 (3d Cir. 2012).  Defendant relies primarily on the Third Circuit's recent decision in *McNair v. Synapse Group Inc.*, which held that former magazine subscription customers of Synapse Group Inc. ("Synapse") who had standing to bring

26

claims for monetary relief under the NJCFA lacked standing to bring a claim under that statute for injunctive relief because they could not demonstrate a likelihood of future harm.  *Id.* at 225.

Specifically, the circuit reasoned that the plaintiffs in *McNair* could be harmed again only if they repurchased subscriptions from the same service despite their knowledge of the service's allegedly untoward practices:

> Because Appellants are familiar with Synapse's practices as well as the various names under which it operates, it is a speculative stretch to say they will unwittingly accept a Synapse offer in the future. But even if they did, they would only be harmed if they were again misled by Synapse's subscription renewal techniques, which would require them to ignore their past dealings with Synapse. In short, Appellants ask us to presume they will be fooled again and again. While we cannot definitively say they won't get fooled again, it can hardly be said that Appellants face a likelihood of future injury when they might be fooled into inadvertently accepting a magazine subscription with Synapse and might be fooled by its renewal tactics once they accept that offer.

*Id.* at 225 n.15.

While *McNair* involved former customers, and the plaintiffs here still own and use their printers, I find the circuit's holding nonetheless dispositive here.  The injunctive relief claim seeks to enjoin Defendant from marketing and selling the printers and cartridges without disclosing that a consumer will be required to purchase all three independent color cartridges once one color is the subject of a toner life end message.  The effect of such an injunction would be to protect potential future purchasers of the printer; it would have no effect on current owners like Plaintiffs who have already purchased the printer.

More importantly, Plaintiffs have not alleged that they intend to purchase another Brother printer in the future, which is the only means by which Defendant's alleged misrepresentations could induce them to buy a second printer under the belief that only exhausted color cartridges

need be replaced in order to continue printing in color.  As in *McNair*, in the absence of allegations that Plaintiffs intend to purchase a second printer, the mere chance that Plaintiffs may choose at some later date to do so and thereby suffer more harm is not sufficient to confer Article III standing.  *See id.* at 224-25 ("[Plaintiffs] do not allege that they intend to subscribe again. Instead, they say that they may, one day, become Synapse customers once more ....")[16]

Plaintiffs argue that they have sufficiently alleged Article III standing because, as current owners of the printer, "they will necessarily be subjected to having to replace three cartridges at a time and thus be periodically repeatedly damaged."  Pl. Opp. at 33.  This argument misses the mark.  As framed by *McNair*, the standing question is whether a putative class representative has alleged that he or she will be harmed, a second time, *by the misrepresentation*, not whether he or she will be harmed by the operation of the product itself.  Moreover, it is not enough that other, non-named members of the class may intend to purchase a printer in the future; "[w]hen, as in this case, prospective relief is sought, the plaintiff must show that he is likely to suffer future injury from the defendant's conduct [and in] the class action context, that requirement must be satisfied by at least one named plaintiff."  *McNair*, 672 F.3d at 223.  Hence the injunction relief claim must be dismissed.

In reaching my decision, I echo Judge Simandle's concern that *McNair*'s ruling will likely have the effect of precluding injunctive relief claims in misrepresentation-related consumer class actions adjudicated in federal court:

> The Court pauses to note that, as a result of the controlling
> precedent in this area, class action plaintiffs pursuing injunctive
> relief to prevent consumer fraud may, in general, have a difficult
> time satisfying the demands of Article III standing. By necessity,

---

[16]    For reasons explained below, it appears that—standing aside—Plaintiffs could not properly state an NJCFA claim based on an intent to purchase the same printer in the future since Plaintiffs have alleged that they are now aware of the falsity of Defendant's misrepresentations.

> such cases can involve only identified plaintiffs who have become aware of the misleading nature of the label. Under the logic of *McNair*, such individual plaintiffs are therefore unable to plausibly claim a likelihood of being "injured" (*i.e.*, misled) by the label again in the future. This conclusion would seem to prevent any Rule 23(b)(2) class action pursuing injunctive relief against consumer fraud based on mislabeling in federal court for violations of the New Jersey Consumer Fraud Act. While this Court's holding is controlled by the clear precedent of *McNair* on this point, it is to be hoped that future Third Circuit opinions will clarify whether this is the intended result of the *McNair* holding.

*Robinson v. Hornell Brewing Co.*, Civil No. 11–2183 (JBS–JS), 2012 WL 1232188 at *7 (D.N.J. Apr. 11, 2012).

Indeed, the Third Circuit's recent decision in *Marcus v. BMW of North America, LLC*, *supra*, which states unequivocally that "[a]s a matter of substantive New Jersey law, [the New Jersey Supreme Court has] instruct[ed] that when a plaintiff knows the truth behind a fraudulent misrepresentation or omission, that plaintiff may not succeed under the NJCFA," 2012 WL 3171560 at *18, underscores Judge Simandle's concern.  The circuit emphasized, in *Marcus*, that plaintiffs cannot satisfy the NJCFA causation element where they "could have known the truth underlying the defendant's fraud."  2012 WL 3171560 at *22.  Thus, further elucidation by the circuit of when standing to assert an injunctive relief claim may be found in the class action consumer fraud context would be helpful.[17]

---

[17]     I add one related point I believe could use further clarification.  It is not clear to me why *McNair*'s presumption of rationality based on prior dealings would not apply to the plaintiffs in that case had they become aware of the misrepresentation but chose to maintain their subscriptions.  The circuit reasons in *McNair* that the plaintiffs in that case "would have been able to represent an injunctive relief class if they had maintained their subscriptions until after moving for class certification," 672 F.3d at 227, however, the circuit reasons elsewhere in its opinion that "[p]erhaps [the plaintiffs] may accept a Synapse offer in the future, but, speaking generally, the law accords people the dignity of assuming that they act rationally, in light of the information they possess."  *Id.* at 225.  In this way, *McNair* appears to suggest that plaintiffs who assert that they intend to purchase a second product sufficiently allege future injury despite

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion with respect to Plaintiffs' breach of express and implied warranty, breach of the covenant of good faith and fair dealing, and injunctive relief claims but denies the motion with respect to all other claims.


DATED:         August 9, 2012                                    /s/   Freda L. Wolfson___
                                                                 Freda L. Wolfson, U.S.D.J.

---

their knowledge that the defendant's statements made to induce purchase are false.  *Accord In re Motor Fuel Temperature Sales Practices Litig.*, No. 07–MD–1840–KHV, 2012 WL 1415508, at *16 n.32 (D. Kan. Apr. 24, 2012) ("The Third Circuit found [in *McNair*] that the named class members lacked Article III standing to sue for injunctive relief because they were not current customers *and did not allege that they intended to subscribe again*.") (emphasis added).  For this reason, one could read *McNair* as suggesting that, while courts should not presume that plaintiffs will be fooled again and again, plaintiffs who expressly assert their willingness to be fooled sufficiently allege future injury.  I question whether *McNair* intended to create what some might see as a perverse incentive and result, unless it is the circuit's view that NJCFA claims for injunctive relief must be relegated to state court where Article III poses no bar.  *See Committee to Recall Robert Menendez From the Office of U.S. Senator v. Wells*, 204 N.J. 79, 102-103 (2010) ("[The New Jersey Supreme] Court is not limited to the 'case or controversy' requirement imposed on the federal courts by way of Article III of the Federal Constitution.")).