**JEFFFREY W. HERRMANN**
**COHN LIFLAND PEARLMAN**
**HERRMANN & KNOPF LLP**
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, New Jersey 07663
Telephone (201) 845-9600

**GREEN & ASSOCIATES, LLC**
**MICHAEL S. GREEN**
522 Route 18, Suite 5
East Brunswick, New Jersey 08816
Telephone (732) 390-5900

Additional Counsel on Signature Page

**Attorneys for Plaintiffs**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT DICUIO, WILLIAM SELF, REUBEN ZADEH, KAREN POCILUYKO, and ANGELA BRYANT on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BROTHER INTERNATIONAL CORPORATION <br><br><br> Defendant. | Case No. 11-cv-01447 (FLW)(TJB) <br><br> CIVIL ACTION <br><br> **CLASS ACTION** <br><br> **SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiffs on their own behalf and on behalf of all others similarly situated, by and through

their attorneys, complain against the defendant Brother International Corporation, as follows:

## ALLEGATIONS APPLICABLE TO ALL COUNTS

### NATURE OF THE CASE

1.      This is a consumer class action pursuant to Fed.R.Civ.P 23, brought on behalf of all persons and entities that purchased certain color printers and color toner cartridges for said printers, distributed, marketed and sold by Defendant, Brother International Corporation (hereinafter "Brother" or "Defendant"). The plaintiffs' claims cover the following models of Brother printers: HL-4070CDW/4040CN/4040CDN/4050CDN, DCP-9040CN/9042CDN/9045CDN, and MFC-9440CN/9450CDN/9840CDW (hereinafter "the Printers"). Further, plaintiffs' claims cover the following color toner cartridges for said printers: TN-110 and/or TN-115 (hereinafter the "Cartridges").

2.      Plaintiffs bring this class action to secure compensatory relief on behalf of individuals and entities who have suffered harm as a result of the purchase of the Printers and Cartridges.  Plaintiffs assert their claims for damages against the Defendant for violation of the applicable state consumer fraud acts. As set forth below, plaintiffs allege that the Defendant sold printers designed to be rendered inoperable when only one of three independent color cartridges is exhausted. As a result, consumers are forced to buy not one, but three replacement color toner cartridges, in order to render the printers operable.

### PARTIES

3.      Plaintiff, Robert DiCuio resides in the Township of Cranbury, County of Middlesex, State of New Jersey. On or about December 4, 2008, plaintiff purchased a Brother HL-4040CN printer from Staples. Plaintiff paid $249.99 for said printer, as well as $39.99 for a 2-year protection plan for said printer. On various occasions, the printer in question was rendered inoperable when

2

a single one of three color cartridges came to the end of its useful life as indicated by the display panel on the printer. Despite the fact that the remaining two colors had not yet been exhausted, plaintiff was forced to purchase not only a replacement TN-110 color toner cartridge for the color that had been exhausted, but two other new toner color cartridges for the other two colors. As a result of this action having taken place multiple times, plaintiff was forced to spend approximately $640 in replacement color toner cartridge purchases. Plaintiff DiCuio never changed the factory default print setting of "auto" on his printer when his printer was rendered inoperable as stated above.

4.     Plaintiff William Self resides in Tampa, Florida. Plaintiff Self purchased two Brother printers in 2009. The first was in January of 2009 from Best Buy, model number HL-4040CN for $256.07. His second purchase was from Amazon.com on February 5, 2009, model number HL-4070CDW for $349.99. On various occasions, the model 4070 printer was rendered inoperable when a single one of three color cartridges came to the end of its useful life as indicated by the display panel on the printer. Despite the fact that the remaining two colors had not yet been exhausted, plaintiff was forced to purchase not only a replacement TN-110 color toner cartridge for the color that had been exhausted, but two other new toner color cartridges for the other two colors. As a result of this action having taken place multiple times, Plaintiff Self had to use up eight toner cartridges before the end of their useful life as indicated by the representations made by Brother. Plaintiff Self never changed the factory default print setting of "auto" on his printer when his printer was rendered inoperable as stated above.

5.     Plaintiff Reuben Zadeh resides in Los Angeles, California. Plaintiff Zadeh purchased a Brother HL-4040CN printer in and around November 2010 at Staples for

3

approximately $250.00.  He bought additional toner cartridges on eBay.  On various occasions, the printer in question was rendered inoperable when a single one of three color cartridges came to the end of its useful life as indicated by the display panel on the printer.  Despite the fact that the remaining two colors had not yet been exhausted, plaintiff was forced to purchase not only a replacement TN-110 color toner cartridge for the color that had been exhausted, but two other new toner color cartridges for the other two colors. Plaintiff Zadeh never changed the factory default print setting of "auto" on his printer when his printer was rendered inoperable as stated above.

6.      Plaintiff Karen Pociluyko resides in Howell, Michigan and purchased her Brother printer in Indiana while she resided in Indiana. She purchased her Brother HL-4070CDW at Fry's Electronics in Fishers, Indiana on January 7, 2010 for $455.99.  On various occasions, the printer in question was rendered inoperable when a single one of three color cartridges came to the end of its useful life as indicated by the display panel on the printer.  Despite the fact that the remaining two colors had not yet been exhausted, plaintiff was forced to purchase not only a replacement TN-110 color toner cartridge for the color that had been exhausted, but two other new toner color cartridges for the other two colors. Plaintiff Pociluyko never changed the factory default print setting of "auto" on her printer when her printer was rendered inoperable as stated above.

7.      Plaintiff Angela Bryant resides in Chicago, Illinois.  Plaintiff Bryant purchased a Brother MFC-9440 at Staples for $899.96 in and around late December 2008. On various occasions, the printer in question was rendered inoperable when a single one of three color cartridges came to the end of its useful life as indicated by the display panel on the printer.  Despite the fact that the remaining two colors had not yet been exhausted, plaintiff was forced to purchase not only a replacement TN-110 color toner cartridge for the color that had been exhausted, but two other new

4

toner color cartridges for the other two colors. Plaintiff Bryant has had to purchase at least $1,053.86 in toner for the printer over the course of approximately one year from April 2010 to September 2011. Plaintiff Bryant never changed the factory default print setting of "auto" on her printer when her printer was rendered inoperable as stated above.

8.　　Defendant, Brother International Corporation ("Brother"), has its principal place of business at 100 Somerset Corporate Boulevard, Bridgewater, New Jersey. On information and belief, defendant Brother sells and markets, Brother Printers and replacement cartridges in New Jersey, as well as throughout the United States.

9.　　Defendants have had, and continue to have, significant contacts with the State of New Jersey. Among other things, defendants do business in the State of New Jersey, have a chain of distribution in the State of New Jersey and have derived and continue to derive significant revenue and income from residents of the State of New Jersey.

## JURISDICTION AND VENUE

10.　　Brother has its principal place of business in New Jersey and distributes, markets and sells its printers throughout the United States, including the State of New Jersey, to Class members. Defendant Brother may be served with process by serving its registered agent for service of process in the State of New Jersey. This Court has original jurisdiction over this class action under 28 U.S.C. §1332(a),(d)(2), (d)(5)(B), (d)(6) because (i) some Plaintiffs and Defendant are citizens of different states, (ii) there are 100 or more class members, and (iii) there is an aggregate amount in controversy of at least $5,000,000, exclusive of interest and costs.

5

## CLASS ACTION ALLEGATIONS

11.    This action is brought and may properly proceed as a class action, pursuant to the

provisions of F.R.C.P. 23. Plaintiffs bring this action on behalf of themselves and all others

similarly situated.  Proposed F.R.C.P 23(b)(3) Class is defined as follows:

A.    All purchasers in the United States of Brother Laser Printers including but not
limited to, models
HL--4070CDW/4040CN/4040CDN/4050CDN,DCP-9040CN/9042CDN/9045CD
N, and MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or
TN-115;

B.    Alternatively, the following sub-classes:

**A Florida SubClass:**
All purchasers, who purchased in and/or resided in at the time of purchase the State of
Florida, of Brother Laser Printers including but not limited to, models
HL-4070CDW/4040CN/4040CDN/4050CDN, DCP-9040CN/9042CDN/9045CDN, and
MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or TN-115.

**A California SubClass:**
All purchasers, who purchased in and/or resided in at the time of purchase the State of
California, of Brother Laser Printers including but not limited to, models
HL-4070CDW/4040CN/4040CDN/4050CDN,DCP-9040CN/9042CDN/9045CDN, and
MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or TN-115.

**An Indiana SubClass:**
All purchasers, who purchased in and/or resided in at the time of purchase the State of
Indiana, of Brother Laser Printers including but not limited to, models
HL-4070CDW/4040CN/4040CDN/4050CDN,DCP-9040CN/9042CDN/9045CDN, and
MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or TN-115.

**An Illinois SubClass:**
All purchasers, who purchased in and/or resided in at the time of purchase the State Illinois,
of Brother Laser Printers including but not limited to, models
HL-4070CDW/4040CN/4040CDN/4050CDN,DCP-9040CN/9042CDN/9045CDN, and
MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or TN-115.

**A New Jersey  SubClass:**
All purchasers, who purchased in and/or resided in at the time of purchase the State of New
Jersey, of Brother Laser Printers including but not limited to, models

HL-4070CDW/4040CN/4040CDN/4050CDN, DCP-9040CN/9042CDN/9045CDN, and MFC-9440CN/9450CDN/9840CDW using color cartridges TN-110 and/or TN-115.

12.     This action is properly maintainable as a class action. The class members for whose benefit this action is brought are so numerous and geographically dispersed that joinder of all members is impracticable, and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court. The numerosity requirement of Fed.R.Civ.P. 23(a)(1) is therefore satisfied.

13.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually seek redress for the wrongful conduct alleged. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Brother's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Brother's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

14.    Rule 23(a) and Rule 23(b)(3) are both satisfied because there are questions of law and fact which are common to the Class and which predominate over questions affecting any individual class member. The common questions include, *inter alia*, the following:

a. Whether Defendant's business practices and misrepresentations constitute violations of the New Jersey Consumer Fraud Act and, if so, the measure of damages;

b. Whether Defendant made uniform misrepresentations to consumers regarding the subject Printers and color Cartridges;

c. Whether the Printers and Cartridges are defective.

d. Whether Defendant's business practices and misrepresentations violate the relevant consumer protection statutes of Florida, Illinois, Indiana, and California; and, if so, the measure of damages.

15.    Plaintiffs claims and the claims of members of the Class all derive from a common nucleus of operative fact.

16.    In satisfaction of Fed.R.Civ.P. 23(a)(3) and 23(a)(4), Plaintiffs is asserting claims that are typical of the claims of the entire Class, and Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests that are antagonistic to those of the other members of the Class. Plaintiffs anticipate no difficulty in the management of this litigation as a Class action. Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation.

## FACTUAL ALLEGATIONS

18.    Defendant Brother markets and sells a wide variety of products for both personal use, home offices and small business. Among such products are the Printers and Cartridges in question.

8

(Attached hereto as **Exhibit A** is the homepage from Brother's website, www.brother-usa.com.)

19.     The Printers contain four different toner cartridges, one in black and three color cartridges, yellow, magenta and cyan. The Printers are sold with, *inter alia*, a user's manual that provides information on the Printer and Cartridges contained therein. (Attached hereto as **Exhibit B** is the Brother Laser Printer User's Guide for Printer Model HL-4070CDW). Said User's Guide explains that the Printer will provide, "advanced warnings to replace consumable items before they run out." For example, the manual explains the "toner nearly empty message" which states that "if the indicator starts blinking, the printer has nearly run out of toner…" "although you can print up to 300 additional pages (at 5% coverage) after the Toner Low message first appears…" The manual goes on to explain that if, for example, a light turns on above the letter "y" in a certain panel, it will indicate that the yellow toner has been used up and that it must be replaced with a new cartridge containing yellow toner. The manual goes on to indicate that the approximate life of each of the three color cartridges is "1500 pages at 5% print coverage (A4 or Letter size)" or "approx. yields based on 5% page coverage (Letter)." With respect to the black cartridge, 2500 pages at 5% print coverage (A4 or Letter size). The manual further explains that when the ink has been exhausted in any one particular cartridge a message will be displayed indicating "toner life end" indicating which particular color cartridge must be replaced in order that the printer continue to operate. (Attached hereto as **Exhibit C** is a page found in one of the User's Guide of the Brother printers.)  At all relevant times, Brother has made representations to consumers as to the approximate life of each color Cartridge based on the number of printed letter size pages and the percent of page coverage with a specific color.  Brother represented and represents, in its user manual and elsewhere, that each of the TN-110 color cartridges (the yellow, magenta and cyan) print 1,500 pages at 5% page

9

coverage of that color. Brother represented and represents, in its user manual and elsewhere, that each of the TN-115 extra large color cartridges (the yellow, magenta and cyan) print 4,000 pages at 5% coverage of that color. The TN-110 black cartridge is represented to print 2,500 pages at 5% page coverage of black toner. The TN-115 extra large black cartridge is represented to print 5,000 pages at 5% coverage of black toner. Plaintiffs and Class Members were informed and believed that they would receive this output from the color cartridges when they purchase the printer and the replacement color cartridges.

20.     This information is repeated in other portions of the user manual emphasizing that each color has its own warning light and that the machine will stop printing once one such light appears. The manual further indicates that each color has its own specifically labeled cartridge, e.g., TN-110C for cyan, TN-110Y for yellow.   In addition, in the manual, the toner cartridge specifications, the outside of each toner cartridge box and Brother's advertising and marketing, it is represented that the color toner cartridges "yield approx. 1,500 pages @ 5% coverage on letter size paper" and that they are "for long-lasting use."

21.     Thus, both the printer itself and the messages it provides on its panel and the user manual lead the consumer to believe that when the toner of any one color has been used up, replacement of that color alone will be sufficient to restore the printer to its full capabilities. (Attached hereto as **Exhibit D** is the document titled "Supply Side Intelligence, What is Your Supply IQ?, The Brother Advantage")  In fact, this is untrue. Rather, if any of the three cartridges utilized for color printing (yellow, magenta or cyan) runs out of ink, the printer will not function again unless all three of these color cartridges are replaced. Upon information and belief, the printer signals that color toners are empty based on page count and not on the amount of ink each individual

10

color toner actually uses that causes all three of the color toners to have to be replaced at the same time. This is not what is represented in Brother's manual, box representations and advertising and marketing materials which states that each toner's life is based on a percentage of page cover by a specific color toner for a specific number of pages.

22.     Defendant Brother markets and sells color cartridges used to replace extended cartridges in the printers. In fact, the user manual of the printers indicates that it is recommended that, "only genuine Brother cartridges" be used as replacements. Each of these color cartridge costs approximately $74. (Attached hereto as **Exhibit E** is the TN-110Y and TN-115Y Brother color laser toner Cartridges as advertised online by Brother and by Best Buy and attached hereto as **Exhibit F** is a copy of the Brother warranty. Thus, if a consumer should find that their yellow cartridge has been entirely used up, they should only have to expend approximately $74 to replace it and restore the printer to full capabilities. However, because the way in which the Printers have been designed, it is necessary to replace not merely the yellow, but the cyan and magenta cartridges as well at an expenditure of over $220. Further, each color cartridge for a subject printer costs more than the black toner cartridge for the printer.

23.     The Plaintiffs have on multiple occasions been forced to replace three of the color cartridges (models TN-110) after only one cartridge needed replacement. In each of these circumstances, the remaining color cartridges had not yet reached the end of their represented lives nor has the ink been exhausted as represented.

24     Plaintiffs allege that, at all relevant times, Defendant knew the Printers were designed so that all three color cartridges had to be replaced when any one cartridge reaches its "end of life." Further, over the course of the past two years, consumers have posted on various internet

sites including the site maintained by the Defendant, their complaints about the nature of the operation of the printers and having been forced to buy three new cartridges when the purchase of only one should have been sufficient.  (Attached hereto as **Exhibit G** are examples of customer complaints posted on the internet). Plaintiffs allege that because of this design of the printers, the printers are significantly more expensive to operate and hence are of a diminished value.

25.     As an admission of the deceptive practices complained of the Defendant has recently changed the disclosures it makes to new consumers of similar printers.  Annexed as **Exhibit H** is a new two page disclosure brochure that is included with new printers in paper form that appears to have been made to specifically address the issues of this case.

26.     The headings for the new Brochure are "User Settings on Color/Mono" and "Toner Cartridge Life", "Methods of detecting toner cartridge life".  (See **Exhibit H**).

27.     As part of new brochure, under the heading "User Settings on Color/Mono", Brother states, "Users can change the Color/Mono settings on the printer driver as follows:

**Auto** – The Machine checks the content of the document for color.  <u>If color is detected anywhere in the document, it will print the whole of the document using all the colors</u>.  If no color content is detected, it will print the document in monochrome.  <u>The default setting on your machine is "Auto"</u>. (*The underlined statements are NOT in Plaintiffs' printers' User Guides*).

**Color** – Whether the document contains color or just monochrome, your machine will print the document using all the colors.  This means for example, that the machine will consume color toner to print documents comprised solely of black text.  If either the Cyan, Magenta or Yellow toner reaches the end of its life while printing a document in Color mode, the print

12

job cannot be completed.  Users can choose to start the print job again in **Mono** mode, as long as black toner is available.

**Mono** – Select this mode if the document has only black and grayscale text and/or objects. If your document contains color, selecting Mono mode prints this document in 256 levels of gray.

**Note** – Users who print primarily black text should select **Mono** mode to prolong the life of their color toner cartridges. (*The underlined statements are NOT in Plaintiffs' User Guides*).

28.     As part of the new brochure, under the heading **"Toner Cartridge Life"**, **"Methods of detecting toner cartridge life"**, Brother states:

This product detects the life of the toner cartridges using the following two methods:

**Detection by an optical sensor**

This product has an optical sensor that detects the remaining toner by checking the level at which toner in a cartridge interrupts light transmitted through windows on either side of the cartridge....

**Detection by counting the rotations of the developer roller**

This product has a function that will count the rotations of each toner cartridge's developer roller and stop the print operation when the upper rotation limit is detected......Users who are not printing color documents can "turn off" this function for their color cartridges by printing in Mono mode.

29.     In contrast to the disclosures now made in the special two page paper brochure of Brother's new printers,  page 39 of a 211 page User Guide provided the Plaintiffs in electronic form

13

on a CD, (annexed as **Exhibit I**), it states in a similar section only:

**Color/Mono**

You can change the Color/Mono settings as follows:

**Color**

When your document contains color and you want to print it in color, select this mode.

**Mono**

Select this mode if your document has only black and grayscale text and/or objects. If your document contains color, selecting Mono mode prints your document in 256 levels of gray.

**Auto**

The printer checks the content of your documents for color. If color is detected, it prints in color. If no color content is detected, it prints in monochrome.

30.    Nowhere in the User Guides provided to Plaintiffs and Class Members does Brother issue the disclosures it now does in its new brochure specifically targeting the issues in this case. Nowhere does Brother disclose to Plaintiffs or Class Members, "Users who print primarily black text should select **Mono** mode to prolong the life of their color toner cartridges" or "If color is detected anywhere in the document, it will print the whole of the document using all the colors. If no color content is detected, it will print the document in monochrome. The default setting on your machine is "Auto."" Without being informed of exactly how these modes of operation use toner, no consumer could reasonably expect that color cartridge toner would be depleted as a result of black and white and greyscale printing.

31.    Brother's admissions in its new disclosures as part of **Exhibit H** make it clear that they knew of the issues regarding the printers and intentionally did not disclose to Plaintiffs and

14

Class Members the material information they now provide. The Defendant hid the nature of the design of the Printers with respect to the need to replace three Cartridges when only one has been exhausted.

## FIRST COUNT
### (Violations of the New Jersey Consumer Fraud Act - N.J.S.A. 56:8-1 et seq.)

32.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 31 above as though recited verbatim and at length

33.     Defendant Brother directed the marketing and sale of the Printers and Cartridges throughout the United States from its New Jersey offices. Hence, Plaintiffs allege that the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 et seq. should govern the Defendants' actions. Plaintiffs seek a nationwide class, based upon the NJCFA.

34.     Plaintiffs allege that the Defendant marketed and sold the Printers and was aware that if any of the color cartridges were exhausted, the machine would not operate unless all the color cartridges were replaced as stated above.

35.     Plaintiffs allege that the Defendant's marketing and sale of the Printers constituted an unconscionable commercial practice in violation of N.J.S.A. 56:8-2 in that consumers are forced to purchase three color cartridges instead of merely one cartridges when only one cartridge is exhausted.

36.     Plaintiffs further allege that the Defendant, in violation of N.J.S.A. 56:8-2 , made material affirmative misrepresentations and engaged in prohibitive affirmative acts by representing that each color cartridge would print up to 1500 pages when in fact, once one color cartridge was exhausted, that remaining two had to also be replaced.

15

37.     Plaintiffs further allege the Defendant knowingly and intentionally omitted any disclosure as to the need to replace not one, but three color cartridges in violation of N.J.S.A. 56:8-2.

38.     Plaintiffs and all class members suffered an ascertainable loss as they had to buy three cartridges when they should have only had to purchase one as a proximate result of the Defendant's violation of N.J.S.A. 56:8-2.

39.     Plaintiffs and all Class members further allege that had they known the true nature of the operation of the Printers, they would not have purchased the Printers in the first place. Plaintiffs and all Class members suffered an ascertainable loss as a result of the money expended to purchase the Printers.

## SECOND COUNT
### (Violation of Unlawful, Unfair and Fraudulent Business Practices Cal. Bus. & Prof. Code § 17200 *et seq.*)
### (On Behalf of California Sub-Class)

40.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 39 above as though recited verbatim and at length

41.     The Manufacturer Defendants' conduct constitutes unfair business acts and/or practices because the Defendants' practices have caused and are likely to cause substantial injury to Plaintiffs which injury is not reasonably avoidable by Plaintiffs in light of Defendants' exclusive knowledge that the Printers are defective and had a diminished value, i.e. that it is necessary to replace all three color Cartridges when the ink in only one has been exhausted products, and is not

16

outweighed by the acts' or practices' benefits, if any, to Plaintiffs. Such conduct is ongoing and continues to this date.

42.     The Defendant's acts or practices of selling their defective printers while omitting the material facts that the Printers are defective, i.e. that it is necessary to replace all three color Cartridges when the toner in only one has been exhausted offends an established public policy or are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

43.     The Defendant's acts or practices are unlawful because they violate California Civil Code §§ 1709-1711 by not disclosing to the public the nature of the design of the Printers with respect to the need to replace three Cartridges when only one has been exhausted represents an omission of material fact. Further, the knowing marketing of printers designed to shut down when only one of three color Cartridges is exhausted and to remain useless until all three Cartridges have been replaced represents an unconscionable commercial practice. The Defendant knowingly or recklessly concealed or suppressed that their Printers are defective, i.e. that it is necessary to replace all three color Cartridges when the ink in only one has been exhausted

44     Plaintiffs were unaware of the defective characteristics of the products and would not have purchased the products, or would have paid less for them, had they known about the necessity to replace all three color Cartridges when the toner in only one has been exhausted.

45.     The Defendant's acts and practices are fraudulent in that they have deceived and/or are likely to deceive Plaintiffs and the California Sub-Class members. Defendant knowingly sold Plaintiffs their defective printers.

46.     Plaintiffs relied upon the Defendant's unfair, unlawful, and fraudulent business acts and practices to their detriment in that they would not have purchased the printers had they known

17

of the true facts and in that they incurred significant expenses for the replacement of all three color Cartridges when the ink in only one has been exhausted.

47.     Plaintiffs have suffered injury in fact and have lost money, the recovery of which is hereby sought, as a result of the Defendant's unfair competition in that they have overpaid for the products, incurred expenses in attempting use printers designed to shut down when only one of three color Cartridges is exhausted and to remain useless until all three Cartridges have been replaced, and/or would not have bought the products had Defendant not misrepresented and omitted that the products are defective.

## THIRD COUNT
### (Violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*)
### (On Behalf of California Sub-Class)

48.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 47 above as though recited verbatim and at length.

49.     At all times relevant hereto, Plaintiffs were "consumer[s]" as that term is defined in Civ. Code § 1761(d).

50.     At all times relevant hereto, the printer and toner products constituted "goods" as that term is defined in Civ. Code § 1761(a).

51.     At all times relevant hereto, the Defendant constituted a "person" as that term is defined in Civ. Code § 1761(c).

52.     At all times relevant hereto, Plaintiffs' purchases of Defendant's printer and toner products constituted a "transaction" as that term is defined in Civ. Code § 1761(e).

53.     At all times relevant hereto, Defendant provided "services" to Plaintiffs within the meaning of Civ. Code § 1761 (b).

18

54.     The CLRA provides, in relevant part, that "[t]he following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: subsection (a)(5) [r]epresenting that goods . . . have . . . characteristics, uses, benefits . . . which they do not have; . . . subsection (a)(7) [r]epresenting that goods . . . are of a particular standard, quality or grade . . . if they are of another; . . . and subsection (a)(9) [a]dvertising goods . . . with intent not to sell them as advertised.  Civil Code §§ 1770(a)(5),(7), and (9).

55.     Defendant intentionally concealed and/or failed to disclose the material facts that Printers are defective and had a diminished value, i.e. that it is necessary to replace all three color Cartridges when the toner in only one has been exhausted and cause Plaintiffs to incur additional expenses to use printers designed to shut down when only one of three color Cartridges is exhausted and to remain useless until all three Cartridges have been replaced. This concealment is done for the purpose of inducing Plaintiffs to purchase the Defendant's printer and toner products.

56.     The information the Defendant concealed and/or did not disclose to Plaintiffs are material facts in that a reasonable consumer would have considered them important in deciding whether to purchase, or whether to pay the stated price for the printer and toner products and because Plaintiffs would have been aware of it and behaved differently by not buying the products, not paying for toner cartridge costs, and/or paying less for the products.54. Plaintiffs justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the Defendant's defective printers.  Had Plaintiffs known of the products' defect, i.e. that it is necessary to replace all three color Cartridges when the toner in only one has been exhausted, they would not have purchased the products.   Plaintiffs incurred monetary damaged as

19

a result of said conduct by Defendant, the recovery of which is hereby sought. Plaintiffs have complied with statutory notice requirements.

## FOURTH COUNT
### (Violations of the Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1 *et seq.*)

57.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 56 above as though recited verbatim and at length.

58.     Defendant is the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer and seller and released the defective Printers and/or Cartridges into the stream of commerce while promoting their sales and use through advertising.

59.     Defendant knew or should have known that the use of the defective Printers and Cartridges causes and would cause damages, but failed to warn the public, including Plaintiffs and the Class, of the same. This misrepresentation was an unconscionable commercial practice.

60.     Plaintiffs and all members of the Class suffered an ascertainable loss, the recovery of which is hereby sought, when they were charged by the Defendant for the defective Printers that had a diminished value and/or Cartridges and for any subsequent expenses incurred as a result of the defective Printers and/or Cartridges including but not limited to the unnecessary purchase of new color toner Cartridges when their old Cartridges had not yet finished their represented life.

61.     The promotion and release of the defective Printers and/or Cartridges into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretense, misrepresentation, and/or concealment, suppression or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise by Defendants, in violation of the Indiana Deceptive

20

Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1 *et seq.*

## FIFTH COUNT

### (Violations of the Illinois Consumer Fraud and Deceptive Business
### Practices Act, Ill. Comp. Stat. Ann. 505/1 through 505/12)

62.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 61 above as though recited verbatim and at length.

63.     Defendant is the researcher, developer, designer, tester, manufacturer, inspector, labeler, distributor, marketer and seller and released the defective Printers and/or Cartridges into the stream of commerce while promoting their sales and use through advertising.

64.     Defendant knew or should have known that the use of the defective Printers and Cartridges causes and would cause damages, but failed to warn the public, including Plaintiffs and the Class, of the same. This misrepresentation was an unconscionable commercial practice.

65.     Plaintiffs and all members of the Class suffered an ascertainable loss, the recovery of which is hereby sought, when they were charged by the Defendant for the defective Printers that had a diminished value and/or Cartridges and for any subsequent expenses incurred as a result of the defective Printers and/or Cartridges including but not limited to the unnecessary purchase of new color toner Cartridges when their old Cartridges had not yet finished their represented life.

66.     The promotion and release of the defective Printers and/or Cartridges into the stream of commerce constitutes an unconscionable commercial practice, deception, false pretence, misrepresentation, and/or concealment, suppression or omission of material facts with the intent that others would rely upon such concealment, suppression or omission in connection with the sale or advertisement of such merchandise by Defendant, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. 505/1 through 505/12.

21

## SIXTH COUNT

### (Violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201 through 501.213 (West))

67.     Plaintiffs reallege and reincorporate by reference paragraphs 1 through 66 above as though recited verbatim and at length.

68.     The Defendant's practices and course of conduct as described above was intended to induce, and did induce, Plaintiffs and Class members to purchase the Printers and Cartridges.

69.     The Defendant's actions violated Florida's Deceptive and Unfair Trade Practices Act Fla.Stat. §501.201 in that: (a) the Defendant failed to give adequate warning and notice with respect to the complaint of problems with the printers despite the Defendant's knowledge that three color cartridges had to be replaced when only one was exhausted; and (b) the Defendant forced Plaintiffs and Class members to expend funds to purchase additional cartridges they would not have had to purchase but for the unfair trade practices.

70.     Defendant knew or should have known that the use of the defective Printers and Cartridges causes and would cause damages, but failed to warn the public, including Plaintiffs and the Class, of the same.  The Defendant's conduct was unfair, unconscionable, and done knowingly and intentionally.  Members of the public were deceived by Defendant's deceptive conduct.

**WHEREFORE,** Plaintiffs, on behalf of themselves and the members of the Class, demand judgment as follows:

(a) A determination that this action is a proper class action maintainable under Federal Rules of Civil Procedure, Rule 23, and certifying an appropriate Class and/or Subclass and certifying Plaintiff as Class and Subclass representatives;

22

(b) Awarding Plaintiffs and members of the Plaintiffs Class compensatory damages;

(c) Awarding Plaintiffs and members of the Plaintiffs' Class counsel fees, costs and disbursements;

(d) Statutory damages (including treble damages) for violations of the applicable statutes and the Consumer Fraud Acts. Pre-judgment and post-judgment interest at the maximum rate allowable at law; and

(e) Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: April 26, 2013

                                   **COHN, LIFLAND, PEARLMAN,**
                                   **HERRMANN & KNOPF, LLP**

**By:   s/Jeffrey W. Herrmann**
           **JEFFERY W. HERRMANN, ESQ.**
           Park 80 West – Plaza One
           250 Pehle Avenue, Suite 401
           Saddle Brook, New Jersey 07663
           Tel:  (201) 845-9600

           **KANTROWITZ, GOLDHAMER & GRAIFMAN**

**By:   s/Gary S. Graifman**
           **GARY S. GRAIFMAN, ESQ.**
           210 Summit Avenue
           Montvale, New Jersey 07645
           Tel: (201) 391-7000
           Fax:(201) 307-1086

           **GREEN & ASSOCIATES, LLC**

**By:   s/Michael S. Green**
           **MICHAEL S. GREEN, ESQ.**
           522 Route 18, Suite 5
           East Brunswick, New Jersey 08816
           Telephone (732) 390-5900

23

DIAMOND LAW OFFICE, LLC

By:   s/Paul Diamond
       PAUL DIAMOND, ESQ.
       1605 John Street, Suite 102
       Fort Lee, New Jersey 07024
       Tel: (201) 242-1110
       Fax: (973) 302-8189

**Attorneys for Plaintiffs**